UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SCOTT HAIGHT, ET AL.,

               Plaintiffs,

   v.

THE WACKENHUT CORPORATION,

               Defendant.

03 Civ. 9870 (SCR)

OPINION AND ORDER

---

**STEPHEN C. ROBINSON, District Judge:**

    Plaintiffs, Scott Haight and seventy-four other security officers who have opted into this litigation, have brought this case against the Defendant, the Wackenhut Corporation, for violations of the Fair Labor Standards Act, 29 U.S.C. § 216(b). Specifically, Plaintiffs claim that Defendant failed to compensate its security officers for time spent performing certain activities preliminary and postliminary to scheduled working time. Defendant has made a motion for partial summary judgment against Plaintiffs, asserting that the Second Circuit has already held that at least some of the activities Plaintiffs list are not compensable under FLSA. The Court grants Defendant's motion and finds that the preliminary activities performed before Plaintiffs retrieve their guns are not compensable because they are not integral to the security officers' principal activities.

    **I.    Undisputed Material Facts**

    The Plaintiffs have all been employed by the Wackenhut Corporation to provide guard and security services for Wackenhut. *See* Plaintiffs' Local Rule 56.1(b) Statement,

1

at ¶¶ (1-a)-(1-xxx).  During the period of Plaintiffs' employment, Wackenhut Corporation had a contract with Consolidated Edison Corporation and subsequently to Entergy Northeast, Inc., to provide security services at the Indian Point Nuclear Facility.  *See* First Amended Complaint, at ¶ 9. At all relevant times, Wackenhut employed its security officers ("SOs") on an hourly basis and was a party to a Collective Bargaining Agreement with Local 515.  *See* First Amended Complaint, at ¶ 9.

Plaintiffs claim that Defendant wrongly refused to compensate them for certain tasks performed immediately before and after their scheduled working time.  The preliminary tasks for which Plaintiffs seek compensation and the time estimates are:

(1) Donning, 4 minutes
    a. Badge into the protected area;
    b. Proceed to the locker room;
    c. Put on uniform and protective equipment, including steel-toed shoes, hard hate helmet, safety glasses, gun holster, and snow-chains and/or rain gear for inclement weather.
(2) Gun-up, 6 minutes
    a. Proceed to the Old Command Post ("OCP") building;
    b. Check mailbox, shift schedule, and relevant notices;
    c. Obtain radio and battery;
    d. In the case of an escort post, obtain keys and post duties binder;
    e. Wait to enter gun room/armory;
    f. Enter gun room/armory to collect and load gun.
(3) Transit:
    a. Non-RAD: Leave OCP and proceed to assigned post, 4 minutes;
    b. RAD: For certain posts where the officer is exposed to radiation, the officer is required to report to the Health Physics Building to retrieve a dosimetry device to monitor exposure to radiation, 6 minutes.
(4) Turn-over, 7 minutes
    a. Upon arrival at post, inspect the condition of the post;
    b. Transfer, check, and log transfer of keys;
    c. Verify number of vests and weapons in the post gun locker;
    d. Collect information regarding fire watches and special instructions;
    e. Sign the patrol sheet for the officer being relieved

The postliminary tasks for which the Plaintiffs seek compensation and the time estimates are:
  (1) Transit:

2

       a. Non-RAD: After leaving assigned post, walk back to gun-room/armory, 4 minutes;
       b. RAD: If the officer had one of the six RAD posts that required a dosimetry device, the officer has to return the equipment prior to returning to gun-room/armory, 6 minutes.
  (2) Gun-down, 4 minutes
       a. Badge into the OCP and put battery back into charger;
       b. Badge into the Lieutenant's office area to turn in patrol sheet to the shift commander;
       c. Go to the gun barrel and unload weapon;
       d. Open gun locker and store gun, ammo, and radio inside;
       e. Badge out of secure area;
  (3) Doffing, 3 minutes
       a. Proceed to locker room;
       b. Take off protective equipment and place inside locker.

*See* Plaintiffs' Local Rule 56.1(b) Statement, at ¶¶ 4-5.

Defendant made a weekly record of hours worked by each SO by recording the beginning and ending time of each work shift. It is undisputed that Defendant refused to record times taken to perform the above-listed preliminary and postliminary activities for compensation. Defendant's motion for partial summary judgment only addresses preliminary activities "donning" and "gun-up," and postliminary activities "gun-down" and "doffing," excluding any activities that occur after the SOs obtain their guns at the beginning of their shift and any activities perform while still armed at the end of their shift.

## II. Plaintiffs' Motion for Leave to File a Second Amended Complaint

According to Federal Rule of Civil Procedure 15(a), Plaintiffs may file a Second Amendment Complaint only by leave of the Court. Since the Court finds that the Second Amended Complaint is not materially different from the First Amended Complaint, it grants leave to serve a Second Amended Complaint and considered it in the course of deciding this motion. The Second Amended Complaint does not prejudice Defendant because the legal arguments proffered in Defendant's legal memorandum in support of

3

the motion for partial summary judgment are still applicable.  For the same reason, the Second Amended Complaint will not create undue delay.  The Court does not find Plaintiffs' amendments to be futile insofar as they provide more specific details about claims that are not addressed in Defendant's motion for partial summary judgment.  *Cf. DeMaria v. Andersen*, 318 F.3d 170, 182 (2d Cir. 2003). The Court's decision below thus applies to the Second Amended Complaint and dismisses some of the claims therein.

### III.     Legal Standard for Granting Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*  The burden of demonstrating that no material fact exists lies with the party seeking summary judgment. *See, e.g.*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A court considering a motion for summary judgment must construe the evidence in the light most favorable to the non-moving party, drawing all inferences in that party's favor.  *See Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).  Rather than asking if "the evidence unmistakably favors one side or the other," a court must ask whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252.  If so, the court may not

4

grant a defendant's motion for summary judgment. Assessing the credibility of witnesses and choosing between conflicting versions of events are roles for the fact finder, not for the court on summary judgment. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).

The non-moving party must present sufficient evidence such that a jury could reasonably find in its favor – "the mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough. *Anderson*, 477 U.S. at 252. "The non-moving party may not rely on mere conclusory allegations or speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

## IV. Discussion

This case is one of a series of similar suits brought by employees who seek compensation for certain activities they must perform before and after their scheduled working time. *See, e.g.*, *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586 (2d Cir. 2007) (consolidating two appeals brought by the same employees against different employers who owned at different times the Indian Point II nuclear power plant); *Albrecht v. Wackenhut Corp.*, 2009 WL 3078880 (W.D.N.Y. Sept. 24, 2009). The statutory basis for Plaintiffs' claims is grounded in the Fair Labor Standards Act, which was enacted to ensure that employees receive a fair day's pay for a fair day's work.

Since the act did not define "work" or "employment," the courts construed those terms broadly. The conflict between the judicial interpretation of "work" and "employment" and Congress's intentions came to a head in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). In *Anderson*, the Supreme Court held that FLSA

required employers to compensate employees for preliminary work activities, including walking from the factory gate to the workbench and changing into work clothes.  328 U.S. at 692-93.

In response to *Anderson*, Congress passed the Portal-to-Portal Act in an attempt to "delineate certain activities which did not constitute work, and therefore did not require compensation." *Reich v. New York City Transit Authority*, 45 F.3d 646, 649 (1995).  The Portal-to-Portal Act narrowed FLSA's coverage by specifically excepting from the statute's coverage walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, and activities that are "preliminary or postliminary" to that principal activity.  *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 27 (2005).

Since the enactment of the Portal-to-Portal Act, the Department of Labor and the Supreme Court have attempted to define "principal activity" and clarify which activities performed immediately before and after the scheduled working time are compensable under FLSA.  According to regulations, "principal activities" are those activities the employee is employed to perform.  29 C.F.R. § 790.8(a).  The regulations further explain that the term "includes all activities which are an integral part of a principal activity" and "those closely related activities which are indispensable to its performance."  29 C.F.R. § 790.8(b), 790.8(c).

In general, "checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks" are not compensable under FLSA.  29 C.F.R. § 790.7(g).  However, in some circumstances changing clothes and washing up after work can be so integral to an employee's principal activity that it is

compensable, such as for an employee in a chemical plant. *Id*., at n. 49; 29 C.F.R. § 790.8(c). The courts have further illuminated this distinction by finding that preliminary/postliminary tasks involving specialized tools or equipment and the donning/doffing of *unique* protective gear are so intrinsically connected to the employee's principal activity that they are considered "principal activities" for which the employee must be compensated. *See Steiner v. Mitchell*, 350 U.S. 247, 248 (1956); *Mitchell v. King Packing Co.*, 350 U.S. 260, 263 (1956); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 30 (2005).

The Second Circuit has applied the case law to find that with respect to workers at a nuclear power plant, ingress/egress security procedures and donning/doffing generic protective gear are not integral to the workers' principal activity. *See Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 592-94 (2007). The ingress/egress procedures were likened to "walking, riding, or traveling to and from the actual place of the principal activity" specifically excepted under the Department of Labor's regulations. 488 F.3d at 592-93; 29 C.F.R. § 790.7(c). The court also noted that the Department of Labor's regulations excepted preliminary and postliminary activities such as washing up and changing from FLSA. 488 F.3d at 593-94; 29 C.F.R. § 790.7(g). In response to the plaintiffs' argument that their employer required these activities, the court concluded that "a helmet, safety glasses, and steel-toed boots may be indispensable to plaintiffs' principal activities [i.e. required by the employer] without being integral." 488 F.3d at 594. Thus, this Court must focus on whether the activities performed by Plaintiffs are *integral*, not just indispensable, to their principal activities.

There are several similarities between *Gorman* and the case before this Court that bear mentioning: both cases involve workers at the Indian Point nuclear power point who sought compensation for substantially similar preliminary and postliminary activities. For example, in *Gorman* the plaintiffs wanted to be compensated for time spent entering and exiting the plant, including waiting in traffic and complying with the plant's security procedures, and donning and doffing generic protective gear. 488 F.3d at 592. In this case, Plaintiffs want to be compensated for badging into the secured area of the plant, putting on hardhats, steel-toed boots, and other generic protective gear, proceeding to another area to check mail, notices, shift schedules, and waiting to obtain their gun (the transit and turn-over activities are not addressed in this motion). *See* Second Amended Complaint, Appendix.

Plaintiffs claim that the tasks they must perform are distinct from those in *Gorman* but they provide no basis for this conclusion. While the Court finds that the reasoning in *Gorman* is wholly applicable here, the Court will address each activity and why Plaintiffs may not seek compensation for them.

   a. **Activities such as badging into secure area, proceeding to locker rooms, and donning/doffing generic protective gear are not integral to Plaintiffs' principal activity and should not be compensated.**

Plaintiffs cannot be compensated for time taken to badge into the protected area because ingress/egress security procedures are not integral to their principal activities. Their procedure is substantially similar to the one in *Gorman*, in which the workers also spent time waiting to swipe their identification badges to enter secured areas. *Gorman*, 488 F.3d at 593. The Circuit Court's rationale was that "security measures at entry are required . . . for everyone entering the plant regardless of what an employee does" and

8

therefore those measures are not integral to an employee's principal activities.  *Id.* at 594.  The same logic applies here.  Plaintiffs may not be compensated for ingress/egress into the secured area where their lockers are located.

Plaintiffs also cannot be compensated for time taken to walk to the locker rooms.  The Supreme Court, construing FLSA and the Department of Labor regulations, concluded that time spent walking or waiting before the principal activity began is excluded from compensation.  *IBP, Inc. v. Alvarez*, 546 U.S. at 40-41.  In contrast, once the principal activity has begun, any waiting or walking within the work shift is compensable under FLSA because it is part of the continuous workday.  *Id.* at 37.  In this case, no principal activity has occurred before Plaintiffs proceed to the locker room.  Therefore, they cannot be compensated for the time it takes to walk to the locker rooms or any waiting time involved.

The Court finds that donning and doffing hardhats, safety glasses, steel-toed boots, gun holster, and inclement weather gear is not integral to the SOs' principal activities and is not compensable.  These items are generic protective gear that the Second Circuit has held to be non-integral and non-compensable under FLSA.  *Gorman*, 488 F.3d at 594.  Under that precedent, Plaintiffs' claim that they should be compensated for the time it takes to don/doff this gear must be rejected.

The Second Circuit also provides an alternative basis for its holding: even if donning/doffing generic protective gear were integral and indispensable to Plaintiffs' principal activities, the Court must still consider whether the time so spent was *de minimis*.  488 F.3d at 549.  The *de minimis* doctrine, which was first articulated in *Anderson*, is still used in FLSA cases to determine if otherwise compensable time should

9

be considered *de minimis* and therefore not compensable. *See Reich v. New York City Transit Authority*, 45 F.3d 646, 652 (2d Cir. 1995). The factors the Court should consider are: (1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants perform the work on a regular basis. *Id.* (citing *Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984). In this case, the time Plaintiffs claim to spend donning/doffing is approximately 7 minutes.[1]

The Court concludes that the time spent donning/doffing generic protective gear is *de minimis*. The Court finds 7 minutes to be an insignificant amount of time such that the practical administrative difficulty of recording the additional time would outweigh the size of the claim in the aggregate. *Reich*, 45 F.3d at 652 (citing *Lindow* for the proposition that employees were not entitled to compensation for an average of 7 to 8 minutes of pre-shift activities). Most significantly, Plaintiffs admit that SOs are not required to change on employer's premises and have the option of changing at home. *See, e.g.*, Haight Dep., at 21-22. In fact, employees are not required to wear some of the gear, such as the steel-toed boots. Haight Dep., at 21-22; Fisher Dep., at 35-36. Considering that Plaintiffs do not and need not don/doff their gear at work on a regular basis, any time spent in the locker room changing would be *de minimis*.[2]

---

[1] The Court notes that 7 minutes for donning/doffing is an overestimate since it is the time Plaintiffs estimated for badging into the secured area and proceeding to the locker room as well as for actually donning/doffing protective gear. However, it will consider this estimate as is because it is required to make all factual inferences in favor of the non-moving party. *See Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).

[2] Other jurisdictions have also held that any donning/doffing where employees are permitted to take their gear home and change at home is not compensable. This does not appear to be the settled rule in this jurisdiction, although it was used by the court in *Albrecht v. Wackenhut Corp.*, 2009 WL 3078880, at *8 (W.D.N.Y. Sept. 24, 2009).

> **b. Activities such as walking to the OCP building, checking mail and shift schedules, obtaining radio and battery, and waiting to enter the gun room *prior to* actually obtaining a gun are not compensable.[3]**

The Court finds that these activities are analogous to the activities assessed above in that they are not integral to Plaintiffs' principal activities.  For the same reason that walking to the locker rooms is not compensable, walking to the OCP building is also not covered under FLSA.  The workday has not begun and the Department of Labor clearly excepted travel time prior to the commencement of the principal activity from compensation.  29 C.F.R. § 790.7(g).

Checking mail, shift schedules, and notices while in the OCP building are generic activities that are not essentially linked to the principal activity of providing security to the power plant.  While these tasks are required by the employer, they are not integral to the employees' work.  These activities are not "akin to the meat cutters sharpening knives in *King Packing Co.*, the battery workers putting on specialized protective gear in *Steiner*, the truck drivers inspecting their trucks for safety concerns in *Barentine v. Arkansas-Best Freight System, Inc.*, 750 F.2d 47 (8th Cir. 1984), or a radiological technologist turning on and preparing a x-ray processing machine in *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 715 (2d Cir. 2001)." *Gorman v. Entergy Nuclear Oper. Inc.*, 2006 WL 4774619, at *4 (S.D.N.Y. April 14, 2006), *aff'd Gorman*, 488 F.3d 586 (2d Cir. 2007).  Therefore, since they are not integral pre-shift activities, Plaintiffs cannot be compensated for the time taken to perform them.

The Court applies the same reasoning to donning/doffing generic protective gear to obtaining radios and batteries before shift.  Radios and batteries are not specialized

---

[3] The Court counts with these activities the concomitant tasks conducted at the end of the shift after Plaintiffs return their gun, such as badging out of the secure area and proceeding from the OCP building back to the locker rooms.

11

gear or equipment that are integral to the SOs work. *See Gorman v. Entergy Nuclear Oper. Inc.*, 2006 WL 4774619, at *5 (S.D.N.Y. April 14, 2006). Plaintiffs cannot be compensated for the time taken to retrieve these items before their shift.

Lastly, as discussed above, waiting time before any principal activity has taken place to effectively start the workday is not compensable under FLSA. *IBP*, 546 U.S. at 40-41. Since Plaintiffs have not commenced their principal activity at that point, Plaintiffs cannot be compensated for the time spent waiting to enter the gun room.

## V.   Conclusion

The Court finds that Plaintiffs cannot be compensated for time spent on the following preliminary and postliminary activities: badging into secure area, proceeding to locker rooms, donning/doffing generic protective gear, walking to the OCP building, checking mail and shift schedules, obtaining radio and battery, and waiting to enter the gun room *prior to* actually obtaining a gun (and the concomitant tasks conducted at the end of the shift after Plaintiffs have returned their guns). The Court grants Defendant's motion for partial summary judgment, and dismisses Plaintiffs' claims related to the above-mentioned activities. The Clerk of the Court is directed to term docket 120.

It is So Ordered.

Dated: White Plains, New York
       March 2, 2010

Stephen C. Robinson, U.S.D.J.

12